UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------

In re

PASCUAL ACEVEDO,

                    Debtor.

-----------------------------------------------------------

Chapter 7
Case No. 07-11702 (AJG)

**OPINION REGARDING CREDITORS' MOTION TO
COMPEL PUBLIC SALE OF REAL PROPERTY**

A P P E A R A N C E S:

KITTAY & GERSHFELD, P.C.
Attorneys for David R. Kittay, Trustee
100 White Plains Road, Second Floor
Tarrytown, NY 10591

      By: Melissa L. Steinberg, Esq.

LANCE ROGER SPODEK, P.C.
Attorney for Creditors Mark J. Levy and Howard R. Vargas
330 West 58 St. – Suite 306
New York, NY 10019-1822

      By: Lange Roger Spodek, Esq.

EDWARD L. KOESTER
Attorney for Debtor Pascual Acevedo
1457 Knapp Street
Bronx, NY 10469

      By: Edward L. Koester, Esq.

**ARTHUR J. GONZALEZ**
**Chief United States Bankruptcy Judge**

      Before the Court is a motion (the "Motion") filed by two general unsecured

creditors, Mark J. Levy and Howard R. Vargas (the "Movants"), seeking an order

compelling the Chapter 7 trustee, David R. Kittay (the "Trustee"), to sell a real property[1] (the "Property") of Pascual Acevedo (the "Debtor") at a public sale to obtain the highest and best offer for the benefit of the general creditor class.[2]

**Background**

On or about June 1, 2001, the Debtor entered into a contract of sale (the "Contract") with Jesus Sosa (the "Purchaser") for the sale of the Property for $90,000. The Purchaser paid the Debtor a $9,000 deposit (the "Deposit") and thereafter made additional payments to the Debtor in the aggregate amount of $26,500 (the "Additional Payments"). Further, the parties agreed, prior to entering the Contract, that time was of the essence and the closing date would be scheduled for June 8, 2004 at 2:00 PM. The closing did not occur because the parties disagreed about the balance remaining to be paid.[3]

Subsequently, the Purchaser commenced an action (the "State Court Action") in the Supreme Court of the State of New York, County of Bronx, seeking specific performance of the Contract. On or about September 8, 2005, the Debtor moved for summary judgment dismissing the State Court Action. On or about September 26, 2005, the Purchaser cross-moved for summary judgment on his specific performance claim. On March 21, 2006, the Honorable Sallie Manzanet ("Judge Manzanet") issued an opinion and order (the "Supreme Court Order") granting the Purchaser's cross-motion for summary judgment and denying the Debtor's motion for summary judgment. On March

---

[1] The Property is a parcel of land located at 1702 Anthony Avenue, Bronx, New York.
[2] The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. Venue of this Chapter 7 case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.
[3] The Debtor claimed that the Additional Payments were made to keep the Contract open pending closing and should not be credited to the purchase price; thus, the Debtor alleged that the Purchaser owed $81,000. The Purchaser claimed that both the Deposit and the Additional Payments should be credited to the purchase price and only $55,000 was owed at closing.

22, 2006, Judge Manzanet's chambers faxed a copy of the Supreme Court Order to the parties. The Supreme Court Order was entered on the docket on or about March 29, 2006 or April 3, 2006.[4]

The Debtor filed a Notice of Appeal on April 11, 2006. In an order dated May 3, 2007 (the "Appellate Division Order"), the Appellate Division unanimously affirmed the Supreme Court Order. On or about May 17, 2007, a notice of entry of the Appellate Division Order was entered.[5] The Debtor did not seek permission to appeal the Appellate Division Order.

On June 2, 2007, the Debtor filed a voluntary petition[6] for relief under Chapter 7 of Title 11 of the United States Code in this Court.[7] On June 4, 2007, the Trustee was appointed as interim trustee for the Debtor's estate. Thereafter, the Trustee became the permanent trustee.

Subsequently, the Debtor informed the Trustee about an offer from a potential buyer, F&F Auto Body, Inc. ("F&F"), to purchase the Property for $250,000. The Trustee, in turn, informed the Debtor that based on his research, the Contract is non-executory and the Trustee is required to finalize the sale of the Property to the Purchaser pursuant to the pre-petition Supreme Court Order and Appellate Division Order (together, the "State Court Orders"). Nevertheless, on April 9, 2010, the Debtor filed a Motion in Support of Order to Authorize Sale of Debtor's Property to Higher and Better Offer (the

---

[4] On or about April 6, 2006, the Purchaser served a copy of the Notice of Entry of the Supreme Court Order on the Debtor.
[5] The Purchaser also served upon the Debtor a copy of the Notice of Entry of the Appellate Division Order.
[6] The Debtor did not disclose information regarding the Property and the State Court Action in its initial Chapter 7 petition. On June 9, 2007, the Debtor amended its schedules to reflect an interest in an unidentified real property, a lawsuit involving this unidentified property, and an alleged executory contract with the Purchaser for the sale of the Property. At the section 341 meeting, the Trustee learned from the Debtor's bankruptcy counsel about the State Court Litigation and that the unidentified property was the Property.
[7] References to Title 11 of the United States Code will hereinafter be referenced as the "Bankruptcy Code."

3

"Debtor Motion"), seeking to sell the Property to F&F. The Trustee filed an objection to the Debtor Motion on April 30, 2010. At the hearing on the Debtor Motion on May 5, 2010, the Debtor requested additional time to file a memorandum of law in support of the Debtor Motion. The Court granted the Debtor leave to file its memorandum of law by May 13, 2010.[8] The Debtor failed to file its memorandum of law and instead, on May 14, 2010, filed a Notice of Withdrawal (the "Withdrawal Notice") of the Debtor Motion.[9]

The Movants, who are pursuing a sale of the Property to a higher and better offeror, filed the Motion on June 14, 2010.[10] The Trustee filed an objection (the "Objection") to the Motion and a memorandum of law in support of the Objection on July 6, 2010. A hearing on this matter was held before this Court on August 25, 2010.

**Discussion**

The issues with respect to the Motion are (1) the legal effect of the State Court Orders and the applicability of section 202.48 of the Uniform Rules for the New York State Trial Courts ("Rule 202.48"), N.Y. Comp. Codes R. & Regs. Tit. 22 § 202.48 (2010), (2) whether the pre-petition Contract is an executory contract that the Trustee may assume or reject pursuant to section 365(a) of the Bankruptcy Code, 11 U.S.C. § 365 (a) (2005), and (3) assuming the contract is not an executory contract, whether the Trustee is obligated to perform in accordance with the State Court Orders.

The Movants' position is that the Contract at issue constitutes an "executory contract" despite the pre-petition State Court Orders because the Purchaser failed to

---

[8] Following the May 5, 2010 hearing, the Trustee advised the Debtor that the Debtor Motion was frivolous because it did not reference any case law or statutory authority and also failed to address whether the Debtor had standing because it does not appear that the Debtor would receive a surplus following the Trustee's administration of the Debtor's estate.

[9] The Court approved the Withdrawal Notice by order dated May 18, 2010.

[10] The Trustee alleges that the Debtor's counsel reached out to the Movants' counsel in hopes that the Movants, creditors of the Debtor's estate, would file a motion similar to the Debtor Motion since the Debtor lacked standing to participate in litigation relating to the Debtor's estate.

obtain a signed "judgment" as required by Rule 202.48. The Movants argue that "[the Purchaser] had no greater rights after the [State Court Orders were] rendered than he had before. [The Purchaser]'s enhanced status could only occur upon his obtaining a signed Judgment." (Mem. Supp. Mot. Compel.)

The Trustee's position is that, according to relevant case law, a pre-petition order or judgment granting specific performance of a real estate sale contract deems the contract executed, which compels the Trustee to finalize the Contract with the Purchaser. Further, Rule 202.48 is inapplicable to this case because the State Court Orders did not direct the Purchaser to settle an order or judgment or to submit an order or judgment for signature.

**The Legal Effect of the State Court Orders and Applicability of Rule 202.48**

N.Y. Comp. Codes R. & Regs. § 202.48, entitled "Submission of orders, judgments and decrees for signature," in relevant parts, provides:

> (a) Proposed orders or judgments, with proof of service on all parties where the order is directed to be settled or submitted on notice, must be submitted for signature, unless otherwise directed by the court, within 60 days after the signing and filing of the decision directing that the order be settled or submitted.
> (b) Failure to submit the order or judgment timely shall be deemed an abandonment of the motion or action unless for good cause shown.

N.Y. Comp. Codes R. & Regs. § 202.48.

The plain language of Rule 202.48 and relevant case law indicate that this rule is applicable only when a court directs a party to settle an order or judgment, or to submit an order or judgment for signature. *See Funk v. Barry*, 89 N.Y.2d 364, 367, 675 N.E.2d 1199, 1201, 653 N.Y.S.2d 247, 249 (1996); *Farkas v. Farkas*, 11 N.Y.3d 300, 309 898 N.E.2d 563, 568 (2008). In *Funk v. Barry*, the Court of Appeals of New York resolved

5

conflicting precedent in the Appellate Division[11] on the issue of whether Rule § 202.48 applies to all court orders or only orders where a court expressly directs a party to submit or settle an order or judgment. *Funk v. Barry*, 89 N.Y.2d at 367. That court held that "[b]y its plain terms, [Rule] 202.48 speaks to the circumstances where the court's decision expressly directs a party to submit or settle an order or judgment." *Id.* Further, in cases that involve uncomplicated dispositions or simple judgment for a sum of money where the court did not direct any party to "settle" or "submit" a proposed judgment for signature, Rule 202.48 is not triggered. *Id.*

Movants cite to the article, "Snatching Defeat from the Jaws of Victory: Uniform Rule 202.48" by Patrick M. Connors[12] to note the "pitfalls and dangers of not obtaining a judgment after a victory at trial or by motion." (Mot. Compel ¶ 17.) It is not clear, however, why the Movants assert that the article provides any support for their position. The article specifically states that *Funk v. Barry* "resolved a conflict in the Appellate Division and held that the 60-day time period in Uniform Rule 202.48(a) does not apply unless the decision explicitly calls for the submission or settlement of a proposed order or judgment for signature." The rest of the article simply discusses the ramifications for parties who fail to comply with the rule.

---

[11] The First and the Second Department held that the 60-day time limit is not triggered unless a decision explicitly directs a party to submit a judgment for the court's signature, *see Donovan v. Dipietro*, 195 A.D.2d 589, 591, 600 N.Y.S.2d 951, 952 (1993); *Helfant v. Sobkowski*, 174 A.D.2d 340, 570 N.Y.S.2d 552 (1991); *Dicini, Inc. v. William Hengerer Co.*, 171 A.D.2d 515, 567 N.Y.S.2d 241 (1991), while the Fourth Department held that the 60-day rule is applicable even where there is no direction to submit or settle the order; all that is required is for the clerk to enter judgment based on the court's minutes, *see Hickson v. Gardner*, 134 A.D.2d 930, 521 N.Y.S.2d 938 (1987).

[12] Patrick M. Connors, *Snatching Defeat from the Jaws of Victory: Uniform Rule 202.48*. New York Law Journal, 5/17/2010 N.Y.L.J. 3 (col 1).

In this case, neither the Supreme Court Order nor the Appellate Division Order directed the Purchaser to settle or submit a proposed order for signature. Therefore, Rule 202.48 is not applicable.

The distinction that the Movants draw between a signed judgment and a court opinion and order and their contention that absent a signed judgment, no enforceable rights exist because only a signed judgment is the "operative controlling document" is also without legal support or merit. The Supreme Court Order states, "Accordingly, [Debtor]'s motion for summary judgment is denied and [Purchaser]'s cross-motion for summary judgment is granted. [Purchaser] is granted judgment as a matter of law on his specific performance claim. This constitutes the decision and order of this Court." (Trustee Objection, Ex. B.) Similarly, the Appellate Division Order affirming the Supreme Court Order states, "[t]his constitutes the decision and order of the Supreme Court, Appellate Division, First Department." (Trustee Objection, Ex. F.) Both the Supreme Court Order and the Appellate Division Order are opinions and orders of the court that are enforceable upon the entry by the clerk's office.[13]

Moreover, the Trustee is correct in pointing out that if there had been any procedural defect in the lower court proceeding, the Appellate Division would have found the Debtor's appeal to be premature.[14] Instead, the Appellate Division considered

---

[13] The Movants urge the Court to analogize the facts of this case to cases where secured creditors have failed to perfect their security interest in collateral and as a result lose their right to a secured position due to the Trustee's "'strong-arm' statutory rights." (Mot. Compel ¶18.) Movants do not provide any legal basis in support of their argument. Section 544(a)(3) enables the trustee to assume the power of a bona fide purchaser of real property from the debtor to void an unperfected mortgage. Had the Orders required entry of judgment, the Movants' argument would have some merit in that the order of specific performance would not have been enforceable at the time of the filing of the petition. Here, however, the Purchaser did all he was required to do to enforce his rights.

[14] An appeal may not be taken by a party until the clerk of the lower court formally enters an "appealable paper," which means a judgment or an order. David Siegel, N.Y. Prac. § 524 (4th ed.); *see Reynolds v.*

7

the Debtor's appeal, found the Debtor's arguments unavailing, and affirmed the Supreme Court Order.

In sum, Rule 202.48 is not applicable and the State Court Orders at issue are enforceable final decrees.

**Whether the Contract Constitutes an Executory Contract**

An executory contract may be assumed or rejected by the trustee or debtor in possession with approval of the court. 11 U.S.C. § 365(a). Although the Bankruptcy Code does not define the term "executory contract," the Second Circuit has defined the term as one "on which performance remains due to some extent on both sides." *Eastern Air Lines, Inc. v. The Ins. Co.* (*In re Ionosphere Clubs, Inc.*), 85 F.3d 992, 998 (2d Cir. 1996) (citing *Nat'l Labor Relations Bd. v. Bildisco & Bildisco*, 465 U.S. 513, 522 n.6 (1984)). The Second Circuit also looks to the standard set forth by Professor Vernon Countryman in his 1973 law review article, *Executory Contracts in Bankruptcy: Part I*, 57 Minn. L. Rev. 439 (1973) ("Countryman"). *See COR Route 5 Co., LLC v. Penn Traffic Co.* (*In re Penn Traffic Co.*), 524 F.3d 373, 379 (2d Cir. 2008). Professor Countryman wrote that an executory contract is one "under which the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." Countryman, 57 Minn. L. Rev. at 460.

Where the remedy granted pursuant to a pre-petition court order is specific performance, the contract is deemed to have been executed by virtue of the court decision and therefore not subject to § 365. *In re Sundial Asphalt Co., Inc.*, 147 B.R. 72, 80

---

*Dustman*, 1 N.Y.3d 559, 561, 804 N.E.2d 411, 412, 772 N.Y.S.2d 247, 248 (2003) (Supreme Court paper identifying itself as both a decision and an order is an appealable paper.)

(Bankr. E.D.N.Y. 1992); *In re Roxse Homes, Inc.*, 74 B.R. 810, 816 (Bankr. D. Mass. 1987); *In re Balco*, 323 B.R. 85, 96 (Bankr. S.D.N.Y. 2005).

The facts and issues in this case are similar to those in *Kendall Grove Joint Venture v. Martinez-Esteve*, 59 B.R. 407 (Bankr. S.D. Fla. 1986) ("*Kendall*"). There, plaintiff-appellant Kendall Grove Joint Venture ("Kendall Grove") and appellee Raul Martinez-Esteve sought to have the court enforce a buy-sell agreement of the real property in dispute. The court ordered Kendall Grove to specifically perform the buy-sell agreement. About a month after the court entered its judgment, an involuntary petition for bankruptcy was filed against Kendall Grove. Kendall Grove sought to reject the contract under § 365(a) of the Bankruptcy Code. The district court in *Kendall* used the Countryman definition of the term "executory contract" to uphold the bankruptcy court's finding that the contract was not executory and thus not subject to § 365(a) despite the fact that title to the property had not yet officially passed. *Id.* at 408. This case stands for the proposition that where, as here, a prior court orders specific performance of a real estate contract, that contract is no longer considered executory.

Another court supported this rule in *In re Sundial Asphalt Co., Inc.* 147 B.R. 72, 80 (E.D.N.Y. 1992). In *Sundial,* the debtor filed a Chapter 11 petition one day before the return date of the summary judgment motion. The court held that because the decree of specific performance had not yet been issued, the agreement remained executory. However, the court found that had the decree of specific performance been issued, the agreement would no longer be executory: "A contract for the sale of land ceases to be

9

executory, or rejectable in bankruptcy, at the instant a decree of specific performance is issued." *Id.* at 80.[15]

**Decree of Specific Performance Here Does Not Constitute a Claim**

Despite the fact that the Contract is non-executory under the Bankruptcy Code, the Court would not compel the Trustee to perform if the Contract constituted a claim against the Debtor. In such a case, Debtor's breach of performance would merely allow the Movants to share in the estate's distributions with other claims of the same class.

To participate in a bankruptcy distribution, a creditor must have a "claim" under § 101(5) of the Bankruptcy Code. 11 U.S.C. § 101(5)(B) (2010). An equitable remedy is a "claim" *only* if the underlying breach gives rise to a right to payment. *Id*. Thus, where a creditor receives a judgment entitling him to specific performance of a land sale contract, that person will have a "claim" if the specific performance decree may be satisfied by an alternative award of monetary damages. *See In re A.J. Lane & Co., Inc.*, 115 B.R. 738, 742 (Bankr. D. Mass. 1990) (holding a seller's obligation under a contract for the sale of real estate is treated as a claim in bankruptcy only if the buyer has not only a right to

---

[15] *In re Meehan*, 58 B.R. 380 (E.D.N.Y. 1986) ("*Meehan*"), a case cited by Movants as a "Second Circuit Case of Interest" in their Memorandum of Law in Support of their Motion to Compel, does not alter this analysis. In that case, Veronica Ann Meehan ("Meehan") and Paul and Susan Bregman ("the Bregmans"), entered into a contract for the sale and purchase of Meehan's residence. Meehan breached the contract prior to closing, causing the Bregmans to commence an action in New York State Supreme Court, Nassau County, (the "State Court") seeking, inter alia, specific performance of the contract. The State Court awarded appellees the requested specific performance as well as pecuniary damages. Prior to the signing of a judgment by the State Court, Meehan filed a bankruptcy petition under Chapter 13. The bankruptcy court lifted the automatic stay as to the specific performance decision but left the stay in place with regard to the portion of the decision awarding the Bregmans damages. In its decision affirming the lower court, the district court held, in dicta, that a previously executory contract is transformed into a non-executory contact once a state court renders a decision deeming performance unnecessary on both sides of the contract. *In re Meehan*, 58 B.R. at 386. Movants seek to distinguish *Meehan* from the case at bar by noting that the district court in *Meehan* did not consider the mandatory procedural steps required to create an enforceable judgment in New York. Even if Movants are correct regarding the procedural issue in that case, *Meehan* is not relevant here because the State Court Orders did create an enforceable judgment prior to the filing of Chapter 7, thereby rendering the contract non-executory.

10

specific performance, but also the right to damages). This provision avoids giving a buyer with an equitable remedy reducible to money more favorable treatment than he would normally obtain through monetary damages alone. *Id.* at 743.

Although not specifically involving the enforcement of a contract but an order of the court directing the posting of security in a contract dispute pending before that court, *In re Dairy Mart* has some relevance here. *New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc.* (*In re Dairy Mart Convenience Stores, Inc.*), 351 F.3d 86 (2d Cir. 2003). In *In re Dairy Mart*, which also involved a claim to enforce another court's order directing the posting of security in a contract dispute, the Second Circuit upheld this Court's denial of a motion to compel respondents to renew a letter of credit issued as a prejudgment remedy in an action commenced prior to respondents' bankruptcy filing.[16] *Id.*

In that case, New England Dairy ("NED") commenced an action against Dairy Mart Convenience Stores, Inc. and Dairy Mart, Inc. (collectively, "Dairy Mart" or "Debtor") in the United States District Court for the District of Connecticut (the "Connecticut District Court") seeking damages resulting from the repudiation of a supply contract between the parties. The Connecticut District Court ordered Dairy Mart to obtain a bond, a letter of credit, or other security in the amount of $2,750,000. (Order of District Ct., July 27, 1997.) The Connecticut District Court subsequently imposed an additional condition requiring Dairy Mart to renew whatever form of security it chose sixty days prior to its expiration as necessary during the life of the litigation. (Order of

---

[16] This Court's opinion was appealed to the United States District Court for the S.D.N.Y. (the "S.D.N.Y. District Court"). The Second Circuit affirmed the S.D.N.Y. District Court's holding that the Debtor is not required to post a renewed letter of credit, but reached this conclusion on the ground that the appellant is not eligible to receive adequate protection because it is not a secured creditor as defined by the Bankruptcy Code. *In re Dairy Mart Convenience Stores, Inc.*, 351 F.3d at 90.

11

District Ct., January 21, 1998.) Dairy Mart filed for bankruptcy in 2001. Soon after the filing, NED moved, *inter alia,* to compel Dairy Mart to comply with its renewal obligation. This court denied that request.

This Court found that the obligation to provide replacement collateral was a dischargeable obligation that would, if satisfied, result in a voidable post-petition preference in favor of NED.[17] Because the court's order constituted a claim in *Dairy Mart*, the Court held that Movants were attempting to collect on a pre-petition debt. Even though the renewal was ordered by a pre-petition court order, the debtor was not compelled to perform because a letter of credit constitutes a monetary claim that is dischargeable under the Bankruptcy Code. *See New England Dairies, Inc. v. Dairy Mart Convenience Stores, Inc. (In re Diary Mart Convenience Stores, Inc.)*, 272 B.R. 66, 72 (S.D.N.Y. 2002).

*In re Dairy Mart* is distinguishable from the case before the Court. Significantly, the order in *Dairy Mart* resulted in a claim against the estate because the remedy granted involved only pecuniary damages. In contrast, the judgment here grants only equitable relief.[18] If the terms of the Contract could have been satisfied with a monetary judgment, as was the case in *Dairy Mart*, the obligation under the State Court Orders *would*

---

[17] Transcript of January 3, 2002 Bankruptcy Court Decision, Response of Dairy Mart Convenience Stores, Inc. and Dairy Mart, Inc. to New England Dairies, Inc.'s Motion for an Expedited Emergency Appeal, dated Jan. 8, 2002, Ex. 1.

[18] The Contract at issue involves the sale and purchase of land where there is no adequate remedy at law due to the unique, valuable, and irreplaceable nature of real estate. The Purchaser alleges in his Supreme Court complaint that the "[P]roperty is unique in that it is a vacant parcel of land in a commercial area, surrounded by other commercial establishments and within very close proximity to major streets and highways." (Mem. in Supp. Trustee's Obj. to Mot. Seeking an Order Compelling Trustee to Sell Real Property at a Public Sale at 8.) Unlike *Dairy Mart*, the Purchaser did not seek, neither did the New York Supreme Court find that, monetary damages would be adequate in this case. Instead, the Purchaser seeks specific performance of the Contract and the Supreme Court Order unambiguously states that the "[Purchaser] is granted judgment as a matter of law on his specific performance claim." (Trustee Obj. Ex. B.)

12

constitute a claim against the estate. Here, because the obligation is not a claim, and as such is not subject to discharge, it must be performed.[19]

**Conclusion**

In sum, the State Court Orders are legally enforceable orders of the court upon their entry. As the State Court Orders did not direct the parties to settle an order or submit an order for signature, Rule 202.48 is not applicable. Further, on account of the pre-petition State Court Orders, the Contract is deemed executed and it is, therefore, not an executory contract such that the Trustee could assume or reject pursuant to § 365. Nor can the Trustee discharge the obligation under the State Court Orders in bankruptcy, as that obligation does not constitute a claim against the estate. The Trustee cannot avoid the equitable remedy of specific performance and must comply with the Orders of the State Court. Therefore, the Motion to Compel the Trustee to Sell the Debtor's Real Property at a Public Sale to Obtain the Highest and Best Offer for the Benefit of the General Creditor Class is denied.

---

[19] Although not raised by any of the parties, it is likely that the States Court Orders directing specific performance would not be voidable as a preference under 11 U.S.C. § 547. To constitute a preference, a transfer within 90 days of the filing must be to or for the benefit of a creditor. 11 U.S.C. § 547(b)(i). Although the Supreme Court Order became final by the Appellate Division Order within 90 days of the filing, it would appear that the Purchaser would not be found to be a creditor under 11 U.S.C. § 101(10). That section defines a creditor as an entity that has a claim against the debtor or the estate. As stated previously, the equitable relief of specific performance in this matter did not constitute a claim, therefore the Purchaser would not be found to be a creditor. Further, it seems that the State Court Orders did constitute a transfer of an interest to the Purchaser. Therefore, without ruling on the issue of a preferential transfer, it appears to the Court that the State Court Orders, although having become final within 90 days of the filing of the petition, did not result in a transfer to or for the benefit of a creditor under section 547(b)(i).

The Trustee is directed to settle an order consistent with this opinion.

Dated: New York, New York
September 10, 2010

**s/Arthur J. Gonzalez**
ARTHUR J. GONZALEZ
CHIEF UNITED STATES BANKRUPTCY JUDGE